415 A.2d 17

## In re INVESTIGATING GRAND JURY OF PHILADELPHIA COUNTY.

## Appeal of Edward WASHINGTON.

Supreme Court of Pennsylvania.

Argued March 3, 1980.

Decided May 30, 1980.

Francis X. Nolan, Philadelphia, for appellant.

Steven H. Goldblatt, Deputy Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

EAGEN, Chief Justice.

On June 1, 1979, the President Judge of the Court of Common Pleas of Philadelphia issued an order granting an application by the district attorney for the empanelment of a county investigating grand jury pursuant to Section 3 of the Investigating Grand Jury Act, 19 P.S. § 267 [hereinafter: Act].[1]  On June 22, 1979, the Commonwealth submitted to the supervising judge of that grand jury a notice that certain matters involving the Philadelphia School District should be brought to the attention of the grand jury pursuant to Section 9 of the Act, 19 P.S. § 273.

On August 27, 1979, the grand jury issued a subpoena duces tecum ordering Edward Washington, Director of Payroll for the Philadelphia Board of Education, to appear

[1].  Act of November 22, 1978, P.L. 1148, No. 271, *as amended*, Act of July 20, 1979, P.L. 50, 19 P.S. §§ 265 *et seq.* (Supp. 1979–80).

before it with various payroll records on September 4, 1979. Washington filed a motion to quash the subpoena which was denied by the supervising judge on October 4, 1979. The judge also refused to certify the order for interlocutory appeal pursuant to 42 Pa.C.S.A. § 702(b).

On October 11, 1979, Washington was served with a second subpoena duces tecum directing his appearance on October 15, 1979. Washington filed a petition for review in the nature of prohibition in this Court which we denied on December 26, 1979. *In re: Investigating Grand Jury of Philadelphia*, 487 Pa. 68, 408 A.2d 1099 (1979).

Washington was again subpoenaed on January 8, 1980. He filed a motion for a protective order in which he reiterated the claims advanced in his earlier motion to quash. The supervising judge denied this motion and held Washington in civil contempt for refusing to be sworn or affirmed before the grand jury. Washington appealed, but then discontinued the appeal when the supervising judge withdrew his contempt order after Washington agreed to be sworn. He appeared before the grand jury on January 14, 1980 and was sworn after a second motion for a protective order was denied. He refused to testify and was held in civil contempt. Washington appealed the contempt order to this Court and sought a stay of the order. The order was stayed by the writer on January 16, 1980 pending further order of the Supreme Court. The appeal was argued before this Court on March 3, 1980.

Washington challenges the legality of the grand jury and its power to subpoena urging that the Act pursuant to which it was empaneled is unconstitutional in that (1) it permits the empanelment of, Section 3 of the Act, 19 P.S. § 267, and investigation by, Section 9 of the Act, 19 P.S. § 273, a grand jury without compliance with the "constitutional" requirements for calling an investigating grand jury recently summarized in *Commonwealth ex rel. Camelot v. Specter*, 451 Pa. 370, 303 A.2d 203 (1973); and, (2) it constitutes an impermissible infringement on the power of the judiciary.

Many years before the enactment of the Investigating Grand Jury Act of 1978 by the General Assembly, this Court adopted certain common law standards as prerequisites to the calling of an investigating grand jury. However, we never said or assumed these prerequisites were constitutionally mandated.

■ While *Lloyd & Carpenter's Case*, 5 Pa.L.J. 55, 3 Clark 188 (1845), referred to the Declaration of Rights, see particularly Pa.Const. Art. I, §§ 8 and 9, in setting forth the prerequisites, neither this decision nor any since has held the prerequisites were constitutionally mandated. Indeed, in *McNair's Petition*, 324 Pa. 48, 59, 187 A. 498, 503 (1936), this Court implied the prerequisites were not constitutionally mandated when we said the Legislature could broaden the scope of a grand jury investigation beyond that allowed by the common law.[2] Moreover, while this Court may properly establish such prerequisites in the absence of a legislative pronouncement, the Legislature, as the representative of the sovereign will of the people, *Montgomery v. Martin*, 294 Pa. 25, 143 A. 505 (1928), has the power to supersede those prerequisites, *Appeal of Hawthorne*, 488 Pa. 373 at 379–380, 412 A.2d 556 at 559 (1980) and its action, as given expression in the Investigating Grand Jury Act of 1978, may not be declared unconstitutional by this Court unless the Act *"clearly, palpably and plainly"* violates the Constitution. *Abraham v. Shapp*, 484 Pa. 573, 576, 400 A.2d 1249, 1250 (1979), and cases therein cited. It is important to note that we are not referred to any provision[3] of the Constitutions of

2. We said: *"Unless specifically authorized by the Legislature*, the grand jury has no power to hear any matter that does not lead to criminal prosecution. . . . "* [Emphasis added.] *McNair's Petition*, supra, 324 Pa. at 59, 187 A. at 503. This clearly implied the Legislature could broaden the scope of allowable investigation by a grand jury.

3. Reference is made to Pa.Const. Art. I, §§ 8 and 9 which set forth the rights of an accused in criminal prosecutions and of the people to be secure from searches and seizures; but, it is cited only as a constitutional basis which allegedly mandates the common law prerequisites. No argument is made that these particular provisions are

this Commonwealth or of the United States guaranteeing individual rights which is necessarily violated by the Act or by a grand jury empaneled pursuant to and conducting an investigation allowed by the Act,[4] and we are not aware of any such violation. Hence, the first prong of Washington's attack on the constitutionality of the Act is rejected.

The argument that the Act is unconstitutional because it impermissibly infringes upon the powers of the judiciary requires an examination of the Act and the function of the judiciary at various stages of the proceedings because only if the judiciary's role is defined can we determine if its powers have been impermissibly abridged.

Section 3 of the Act, 19 P.S. § 267, states that the president judge of a court of common pleas "shall" issue an order granting an application for the convening of a grand jury if the application of the district attorney states "the convening of a county investigating grand jury is necessary because of the existence of criminal activity within the county which can best be fully investigated using the investigative resources of the grand jury." A refusal to grant the application is appealable to the "Chief Justice of the Supreme Court or such justice of the Supreme Court who is designated by rule to hear such appeals." No appeal provision from an order granting the application exists. Cf. *In re: Application of Biester*, 487 Pa. 438, 445 n. 7, 409 A.2d 848, 852 n. 7 (1979). If permission to convene the grand jury is granted, it may proceed to investigate a matter after it is brought to its attention by the district attorney or the court. Section 7 of the Act, 19 P.S. § 271. The investigation may proceed only after section 9 of the Act, 19 P.S. § 273, is complied with. This section requires the submission of a notice to the supervising judge which alleges that "the

violated by the Act or will of necessity be violated by an implementation of the Act.

4. Undoubtedly, a particular grand jury might through excesses violate an individual's right or rights, but instantly no argument asserting a particular right of Washington has been violated has been advanced. Rather, the argument is confined to a broad constitutional attack on the Act.

matter in question should be brought to the attention of the investigating grand jury because the investigative resources of the grand jury are necessary for proper investigation" and "that one or more of the investigative resources of the grand jury are required in order to adequately investigate the matter." After the notice is submitted and the matter is brought to the attention of the grand jury by the district attorney or the court pursuant to section 7 of the Act, 19 P.S. § 271, it begins its investigation of the matter and presumably, given the absence of any requirement of approval of the notice, may do so without any particular authorization by the supervising judge. The grand jury in conducting its investigation may then utilize its "investigative resources" to inquire into the matter which was brought to its attention subject to the limitation that the matter involved be an alleged offense "against the criminal laws of the Commonwealth." Section 7 of the Act, 19 P.S. § 271. Finally, section 6 of the Act, 19 P.S. § 270, authorizes discharge of a grand jury by the supervising judge when a determination is made that the grand jury is not conducting proper investigatory activity and such an order is subject to appellate review.[5] Obviously, such a discharge would normally occur only after an investigation was underway because only then could the investigation be improper.[6]

The judiciary's function within the statutory scheme up to the point a grand jury begins exercising its powers is, hence, very limited.

First, Section 3 of the Act, 19 P.S. § 267, by the use of the term "shall"[7] mandates convening of a grand jury if the

5. This review is again conducted by the Chief Justice or a designated Justice of the Supreme Court.

6. We say normally because, given the terms of Section 6 of the Act, 19 P.S. § 270, the judge could, at an earlier time, discharge the grand jury for not conducting any investigatory activity, i. e. for "not conducting proper investigative activity."

7. While the term "shall" has in certain contexts been considered discretionary, In re: Rizzo, 247 Pa.Super. 13, 371 A.2d 1013 (1977), normally it is deemed mandatory, Abraham v. Shapp, 484 Pa. 573, 400 A.2d 1249 (1979), and no reason exists instantly to assume it was

statement in the application is facially adequate under the terms of the Act.[8] Discretion exists only in examining the adequacy of the application. Once the president judge determines the application is adequate, he must grant it. But the Legislature has not necessarily usurped a judicial function by so mandating. The judiciary still determines the adequacy of the application as to the "statement" requirements in the application as established by the Legislature. Additionally, as will be seen, the exercise of the more traditional powers of the judiciary to supervise, control, and, indeed, discharge the grand jury are merely postponed, rather than exercised at the initial stage of empanelment. Moreover, while this procedure is vastly different than at common law, the mere empanelment of the grand jury affects no individual rights of our citizens and the mere postponement of judicial control over the grand jury until it begins its investigations is not a usurpation of the judicial functions.

■ Our interpretation of section 3 of the Act, 19 P.S. § 267, is fortified by the lack of any provisions in the Act for a hearing or affidavit to establish a factual basis for the statements in the application, for a right to appeal an order granting an application wherein the conclusions from facts established or set forth in an affidavit could be reviewed, and for standing to challenge an order granting such an application. *In re: Application of Biester,* supra. The absence of these clearly indicates the president judge merely evaluates the application's facial sufficiency to meet the

used in a discretionary way, particularly since, in sharp contrast, both "may" and "shall" appear numerous times throughout the Act. Our interpretation of "shall" is contrary to two Common Pleas Court rulings, *Commonwealth v. Ford,* 798 June 1979 (C.P.Phila.1974); *In re: September 24, 1979 Multi-County Investigating Grand Jury,* C.P. Misc. Motion 79–15, 054, but much of the authority exercised by the president judge as a result of those decisions at the time of empanelment is recognized by our decision as existent, but exercisable at a later time. See discussion *infra.*

8. Any appeal from a refusal to grant the application would also be confined to an examination of the president judge's determination that the application is facially inadequate.

"statement" requirements of the Act. In effect, grand juries may be empaneled on the representations of the district attorney which satisfy section 3 of the Act, 19 P.S. § 267.

█ Second, section 9 of the Act, 19 P.S. § 273, is only a notice provision and requires, similarly to section 3 of the Act, 19 P.S. § 267, mere allegations of, *inter alia*, matters to be investigated. Approval of the notice by the supervising judge is not required by the Act before the matter may be brought to the attention of the grand jury.[9] In effect, specific investigations may be brought to the attention of the grand jury without judicial approval. Here again the practice differs substantially from that which previously constituted the law of the Commonwealth, but, as with empanelments, the bringing of a matter to the attention of a grand jury effects no individual rights. In other words, it is not until the grand jury exercises its powers that our citizens are affected; hence, the empanelment and presentation of a matter for investigation to the grand jury are allowed to occur based on statements and allegations of the district attorney, and the function of the judiciary up to this point is limited to evaluating the facial adequacy under the Act of the application and notice.

█ The more traditional functions of the judiciary are brought to bear when the grand jury begins to exercise its powers. Once the grand jury exercises its powers, individuals affected by that exercise, see *In re: Application of Biester, supra,* may challenge the validity and adequacy of the statements by which empanelment was obtained, the validity and adequacy of the notice by which a matter was submitted to the grand jury, and the exercise of power by

---

9. To say no approval of the notice is required by the Act is not to say the notice cannot *sua sponte* be rejected as inadequate for failure to comply with section 9 of the Act, 19 P.S. § 273. But any adequacy determination the court might *sua sponte* undertake would be confined to the facial adequacy of the notice to meet the allegation requirements of section 9 of the Act, 19 P.S. § 273. For as with empanelments, nothing in the Act suggests the supervising judge should look beyond the notice because there are no hearing or affidavit requirements and no appeal provisions.

the grand jury toward the individual through a subpoena challenge. See *Appeal of Thomas Hawthorne*, supra; *In re: Grand Jury Proceedings*, 486 F.2d 85 (3rd Cir. 1973).

▐ Any challenge to the empanelment statements and the submission notice necessarily brings to bear the more traditional functions of the judiciary over grand juries including the authority to discharge. Section 6 of the Act, 19 P.S. § 270. If a challenge to the statements or allegations of the application to empanel or the submission notice is made, the supervising judge is afforded discretion in evaluating the challenge. The judge may hear evidence from the challenger which is relevant to the validity of the statements or allegations. He may accept a factual affidavit, evidence, or factual representations of the district attorney through an *in camera* or, where appropriate, adversary hearing. The judge must then redetermine that the allegations and statements are adequate in terms of the Act and determine that they were made in good faith. In this context, good faith should not be found unless the statements and allegations were made as a result of information, rather than surmise, which could include tips, rumors, or evidence.[10] Cf. *Appeal of Thomas Hawthorne*, supra; *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Furthermore, the information should support, *inter alia*, a reasonable conclusion of the possibility of criminal activity, *Appeal of Thomas Hawthorne*, supra; *United States v. Williams*, 552 F.2d 226 (8th Cir. 1977); *United States v. Sisack*, 527 F.2d 917 (9th Cir. 1976), to support the statements and allegations including the "existence of criminal activity . . . which can best be fully investigated using the investigative resources

10. Since Sections 3 and 9 of the Act, 19 P.S. §§ 267 and 273, require only allegations, the Legislature clearly intended to abandon the common law limitations. *Appeal of Thomas Hawthorne*, supra. *Commonwealth v. Ford*, supra, is contrary on this particular point in that it requires trustworthy information and is, hence, to that extent disapproved. But, if the information used is patently untrustworthy or is shown to be so uncontrovertible or conclusive evidence, the court should find the allegations or statements in the application are not made in good faith.

of the grand jury," section 3 of the Act, 19 P.S. § 267, and of which resources "one or more . . . are required in order to adequately investigate the matter." Section 9 of the Act, 19 P.S. § 273.

■ With this background, we now focus on the second prong of Washington's attack on the constitutionality of the Act. As previously indicated, we conclude the provision that the president judge must grant an application to empanel a grand jury, if it is facially adequate,[11] is merely a postponement of the exercise of the judicial authority over grand juries until empanelment and investigations are properly challenged. When this occurs, the supervising judge exercises judicial authority in accordance with the previously-mentioned standards, and, while the standards for empaneling a grand jury and allowing an investigation have been lessened to good faith allegations, the supervising judge still evaluates the allegations of the district attorney in accordance with identifiable standards [12] and supervises the activities of the grand jury. *Appeal of Thomas Hawthorne*, supra; *In re: Grand Jury Proceedings*, supra.

Hence, the Legislature has not dictated a conclusion to the courts, compare *Commonwealth v. Sutley*, 474 Pa. 256, 378 A.2d 780 (1977), nor given full control of grand juries to prosecutors since statements and allegations must be made in good faith and our courts exercise considerable control over the exercise of power by the grand jury. See *In re: Grand Jury Proceedings*, supra; *Appeal of Thomas Hawthorne*, supra. Thus, the judicial function has not been infringed upon, only the standards for empanelment of and

11. As previously mentioned, the judge would have discretion in evaluating the facial adequacy of the petition.

12. As long as the standards do not infringe on the constitutional rights of individuals, the Legislature may and has often established standards for the judiciary to apply. Examples include treatment of juveniles, see 42 Pa.C.S.A. §§ 6301–65, competency of witnesses and evidentiary questions, see 42 Pa.C.S.A. §§ 5923–27, 5911–19, 5931–34, 6101–12, 6131–37.

investigations by the grand jury have changed.[13]  Cf. *United States v. Fein*, 504 F.2d 1170 (2d Cir. 1974);  *United States v. Chiarizio*, 388 F.Supp. 858 (D.Conn.1975);  *State v. Jackson*, 110 Ariz. 383, 519 P.2d 848 (1974).  Finally, to the extent that the lessening of the standards for empaneling a grand jury allows the subpoena power to be exercised by an entity which might be said to differ from prior grand juries in that less is necessary to empanel it and to allow it to exercise powers, this does not infringe upon a judicial function because conferring of subpoena power has traditionally been a power of the Legislature, cf. *Commonwealth ex rel. Specter v. Freed*, 424 Pa. 508, 228 A.2d 382 (1967);  *Commonwealth ex rel. Margiotti v. Orsini*, 368 Pa. 259, 81 A.2d 891 (1951), and enforcement remains a judicial function.

Hence, we conclude the Act has not been shown to be an impermissible infringement on the judiciary.[14]

Order affirmed, and the stay previously granted is vacated.

NIX and FLAHERTY, JJ., concur in the result.

**13.**  Compare *Dauphin County Grand Jury Investigation Proceedings (No. 2)*, 332 Pa. 342, 2 A.2d 802 (1938), which held unconstitutional an act of the Legislature suspending an investigation by a grand jury.

**14.**  We are not unmindful of the facts that our ruling today creates a close parallel between federal and state grand juries and that the Court of Appeals for the Third Circuit has said that "although federal grand juries are called into existence by order of the district court, . . . they are 'basically  . . .  a law enforcement agency.'" *In re: Grand Jury Proceedings*, supra at 89–90, quoting *United States v. Cleary*, 265 F.2d 459, 461 (2d Cir.).  But it is one thing to say the grand juries created by the Act differ substantially from grand juries allowed by this Court at common law in that they may be empaneled and allowed to investigate on a lesser showing, and it is quite another to say the judicial power has been infringed upon as a result of the Act.  The latter requires a showing that the district attorney may dictate the empanelment of a grand jury while our examination reveals the Act requires that, at the proper time, he make a showing in accordance with standards from which the court determines the validity of the empanelment and investigation.  In such circumstances and absent a clear violation of an individual's rights or the judiciary's function, we cannot second guess the wisdom of the Legislature in determining the standards under which a grand jury may be convened.