**In re GRAND JURY SUBPOENA *DUCES TECUM* DATED NOVEMBER 15, 1993.**

**No. 93–M–11–189 (MBM).**

United States District Court, S.D. New York.

Feb. 8, 1994.

---

### OPINION AND ORDER

MUKASEY, District Judge.

This is a motion by a corporation and three of its executives to quash a subpoena *duces tecum* issued to the corporation by a grand

jury investigating initially certain activities related to securities trading. As discussed below, a later focus of the grand jury investigation has become possible obstruction of justice and kindred offenses. Because the subpoena is unreasonably broad, and because the representatives of the grand jury oppose any modification of its reach, the motion to quash is granted.

### I.

The identities of the parties and, at the request of counsel for the movants, even the precise nature of the charges being investigated and the identities of counsel, have been omitted from this opinion so as to maintain grand jury secrecy. The subpoena at issue was addressed to a corporation that will be referred to as X Corporation. The subpoena demands that X Corporation provide the grand jury with the central processing unit (including the hard disk drive) of any computer supplied by X Corporation for the use of specified officers and employees of X Corporation, or their assistants. It demands also all computer-accessible data (including floppy diskettes) created by any of the specified officers and employees or their assistants. In addition to corporate records, personal documents are stored on the subpoenaed devices, including personal financial information, *see* President's Aff. ¶ 9, a draft of an employee's will, *see* Vice President and General Counsel's Aff. ¶ 5, and legal documents relating to the Chairman's personal funding of a third party's purchase of certain goods, *see id.*

Three of the specified officers of X Corporation—the owner and Chairman, the President, and the Vice President and General Counsel—and X Corporation itself have moved to quash the subpoena on three grounds: that it requests information that is not in the possession, custody or control of X Corporation; that it is overly broad; and that it requests privileged documents. Because the subpoena is quashed based on its unreasonable breadth, there is no need to address the movants' other objections.

### II.

A grand jury subpoena *duces tecum* is unreasonably broad under Federal Rule of Criminal Procedure 17(c) if "there is no reasonable probability that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *United States v. R. Enters.*, 498 U.S. 292, 301, 111 S.Ct. 722, 728, 112 L.Ed.2d 795 (1991). The subpoena at issue here is not framed in terms of specified categories of information. Rather, it demands specified information storage devices—namely, particular computer hard drives and floppy disks that contain some data concededly irrelevant to the grand jury inquiry, *see Hearing Tr.* at 12 (representative of grand jury stating that "[w]e are obviously not concerned with the will or other documents that may be installed there"). As a result, there is an issue of whether the term "category of materials" used in the *R. Enterprises* standard should be applied to the information-storage devices demanded, or to the documents contained within them. If the categories of materials properly are seen to be hard disk drives and floppy disks, then the subpoena at issue would pass the *R. Enterprises* test because it is highly probable that these devices will contain some relevant information. If, on the other hand, the categories of materials properly are seen to be the various types of documents contained on these devices, then the subpoena would be unreasonably broad because there are easily separable categories of requested documents that undoubtedly contain no relevant information.

The Second Circuit has not yet addressed this issue as applied to computers and electronic documents, but it has addressed a closely related issue as applied to filing cabinets and paper documents. In *In re Horowitz*, 482 F.2d 72, 79 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973), the Second Circuit considered a Fourth Amendment challenge to the breadth of a subpoena demanding the entire contents of particular filing cabinets. Although *In re Horowitz* was not decided under Rule 17(c) expressly, the criterion applied by the Second Circuit to assess the subpoena—reason-

ableness—is the same criterion applicable under Rule 17(c).

The subpoena before the Second Circuit in *In re Horowitz* had been narrowed by the district court to exclude personal documents, yet the Second Circuit found that it still encompassed irrelevant documents. As a result, the Second Circuit through Judge Friendly narrowed it further, excluding from its scope categories of documents that "have no conceivable relevance to any legitimate object of investigation by the federal grand jury." *Id.* at 79–80. Implicit in *In re Horowitz* is a determination that subpoenas properly are interpreted as seeking categories of paper documents, not categories of filing cabinets. Because it is easier in the computer age to separate relevant from irrelevant documents, Judge Friendly's ontological choice between filing cabinets and paper documents has even greater force when applied to the modern analogues of these earlier methods of storing information.

The current matter warrants a resolution similar to that in *In re Horowitz*. Government counsel have conceded on behalf of the grand jury that the subpoena demands irrelevant documents. Moreover, the government has acknowledged that a "key word" search of the information stored on the devices would reveal "which of the documents are likely to be relevant to the grand jury's investigation." *Id.* at 3. It follows that a subpoena demanding documents containing specified key words would identify relevant documents without requiring the production of irrelevant documents. To the extent the grand jury has reason to suspect that subpoenaed documents are being withheld, a court-appointed expert could search the hard drives and floppy disks. *See* Fed.R.Evid. 706(a). Despite the suggestion that this procedure could resolve the dispute, the government opposes any modification of the subpoena, asking instead that this Court rule on the enforceability of the subpoena "as issued." *Hearing Tr.* at 17; *accord id.* at 25.

The government presses two principal arguments in favor of enforcing the subpoena without modification. First, it contends that insofar as the Fourth Amendment is the source of the constitutional prohibition on overbreadth, the movants have not established the requisite reasonable expectation of privacy. Although I am not unmindful of the privacy interests of X Corporation employees in the personal documents—such as personal financial information and a will—within the scope of the subpoena, the power to quash the subpoena pursuant to Rule 17(c), *see Margoles v. United States*, 402 F.2d 450, 451–52 (7th Cir.1968), obviates recourse to the Fourth Amendment. As a result, the government's first argument need not be addressed.

Second, the government argues that the subpoena must be broader than usual because the grand jury has expanded its investigation into suspected obstruction of justice and related offenses. Specifically, it argues for "a more sweeping demand than might normally be made" because it

has reason to believe that [X Corporation] did not fully comply with prior subpoenas *duces tecum* to it, that records in the possession of [X Corporation] were destroyed to avoid compliance with an SEC subpoena *duces tecum* and, further, that [X Corporation] would compliantly withhold from the grand jury any records demanded on the grounds that they were "personal," if asked to do so by any of its officers, even if related to [X Corporation's] business—as not "rightfully" in the possession of [X Corporation]. If this occurred, it was also possible—even likely—that such records would not be identified to the grand jury as having been withheld.

*Opposition Memorandum*, at 35. The wider grand jury investigation into obstruction and related charges indeed justifies a commensurately broader subpoena. For example, if computer directory files are relevant to the issue of whether stored documents have been tampered with or destroyed, a subpoena demanding such files would be justified. However, the expanded investigation does not justify a subpoena which encompasses documents completely irrelevant to its scope, particularly because the government has acknowledged that relevant documents can be isolated through key-word searching.

In sum, because the subpoena at issue unnecessarily demands documents that are

irrelevant to the grand jury inquiry, it is unreasonably broad under Federal Rule of Criminal Procedure 17(c). Accordingly, because this Court does not have sufficient information to identify relevant documents (including directory files) and modify the subpoena, and because the government seeks a determination of the subpoena's validity "as issued" and opposes its modification, the subpoena is quashed in its entirety, without prejudice to issuance of a narrowed subpoena *duces tecum.* To preserve the practical ability of the grand jury to issue a narrowed subpoena, X Corporation and its officers, agents and employees—including the individual movants—are directed to continue to cause the computers and related materials that were the subject of the quashed subpoena to be preserved intact in the manner specified in Judge Sweet's sealed December 1, 1993 Order.

SO ORDERED.