943 A.2d 929

## In re DAUPHIN COUNTY FOURTH INVESTIGATING GRAND JURY.

### Petition of Louis A. DeNaples and Mount Airy # 1, LLC.

Supreme Court of Pennsylvania.

Dec. 10, 2007.

Richard A. Sprague, Esq., Theodore John P. Chylack, Esq., Geoffrey Richard Johnson, Esq., Sprague & Sprague, Philadelphia, for Louis A. DeNaples and Mount Airy #1, L.L.C., Petitioner.

Edward Michael Marsico, Jr., Esq., Francis T. Chardo, Esq., Dauphin County District Attorney's Office, Harrisburg, for Commonwealth of Pennsylvania, Respondent.

Christopher D. Carusone, Esq., Amy Zapp, Esq., Thomas W. Corbett, Jr., Esq., Office of the Attorney General, Harrisburg, for amicus curiae Office of Attorney General of Pennsylvania.

BALDWIN, CAPPY, BAER, CASTILLE, EAKIN, FITZGERALD and SAYLOR, JJ.

## *OPINION*

Justice CASTILLE.

This matter concerns the Dauphin County Fourth Investigating Grand Jury and is before us on an Application for review styled as an emergency. Petitioners Louis A. DeNaples and Mount Airy # 1, LLC, filed an application for, *inter alia*, review of three orders entered by the supervising judge of the Grand Jury, all arising out of the issuance of Grand Jury subpoenas. Based on the reasoning that follows, petitioners' applications are hereby denied. In addition, the existing stay, which this Court entered on October 2, 2007, is dissolved. We also dispose of various collateral filings.

### I. *Background*

On February 1, 2007, the Pennsylvania Gaming Control Board ("Board") awarded petitioners a Category 2 slot machine license in a revenue-or tourism-enhanced location, pur-

suant to the Pennsylvania Race Horse Development and Gaming Act. 4 Pa.C.S. § 1101 *et seq.* As part of the Board's licensing process, the Board's Bureau of Investigations and Enforcement ("BIE") conducted an extensive background investigation which involved various Commonwealth and federal agencies and offices. As part of the licensing process, the Board convened both extensive public and confidential sessions, some of which apparently occurred within Dauphin County, where various witnesses, including petitioner DeNaples, owner of Mt. Airy, presented testimony. The Board's licensing determination was subsequently upheld on direct appeal to this Court. *Pocono Manor Investors, L.P. v. PGCB,* 592 Pa. 625, 927 A.2d 209 (2007).

The Honorable Edward M. Marsico, Jr., District Attorney of Dauphin County, filed an Application for an Investigatory Grand Jury on May 4, 2006. The application to investigate concerned certain matters relating to the Board's decision to award petitioners the gaming license. The application was granted on June 2, 2006 by the Honorable Richard A. Lewis, President Judge of the Dauphin County Court of Common Pleas. President Judge Lewis also appointed the Honorable Todd A. Hoover as the supervising judge of the Grand Jury.

On May 3, 2007, the Grand Jury issued three subpoenas *duces tecum* to the Board and its Executive Director, directing them to produce documents relating to petitioners' gaming application and license. Petitioners responded by filing a Petition to Intervene, to Stay Grand Jury Subpoenas, and for Access to Notice of Submission. On June 3, 2007, Judge Hoover entertained oral argument on petitioners' filings. On July 6, 2007, Judge Hoover ordered the District Attorney to provide petitioners with a copy of the Notice of Submission, which had been amended. Also on July 6, 2007, a subpoena *duces tecum* was served on petitioner DeNaples himself, directing him to appear before the Grand Jury. On July 18, 2007, petitioners filed an Omnibus Motion to Quash Grand Jury Investigation and Omnibus Motion to Quash Grand Jury Subpoenas. A stay of enforcement was entered by Judge Hoover. On July 31, 2007, petitioners filed a Motion for an

Evidentiary Hearing Regarding Violation of Grand Jury Secrecy, alleging that the many media reports of the Grand Jury proceedings demonstrated a breach of secrecy.

On September 20, 2007, Judge Hoover entered an order granting in part and denying in part petitioners' Motion to Quash Grand Jury Subpoenas. Judge Hoover granted the portion of the motion to quash relating to notes of an executive session of the Board relating to petitioners' application for a license, but denied the portion of the motion seeking to quash the subpoena requesting the transcript and records of that executive session of the Board. Also on September 20, 2007, Judge Hoover issued an order that denied the request for the original Notice of Submission and concluded that the Petition to Intervene and the request for access to Notice of Submission were rendered moot.

On September 21, 2007, Judge Hoover entered another order which denied petitioners' Motion to Quash for Violations of the Grand Jury Act, as well as their request to disqualify the Dauphin County District Attorney's Office, finding, *inter alia,* that the Grand Jury was impaneled in good faith. Also on September 21, 2007, Judge Hoover entered a separate order which: (1) denied the Motion to Quash Subpoena directed to petitioner DeNaples, (2) lifted the stay of enforcement, and (3) deemed the *duces tecum* clause withdrawn by the Commonwealth. On September 24, 2007, the above-described orders were formally entered. On the same day, three subpoenas *duces tecum* were issued to the Board. Finally, on September 25, 2007 Judge Hoover issued an order which found that the September 24th subpoenas satisfied the need for specificity and therefore ordered the Board to comply.

On October 1, 2007, petitioners filed the present emergency Application for Review of Judge Hoover's orders, along with various other applications with this Court. Petitioner also requested a stay and asserted, among other things, that the District Attorney lacked the authority to investigate alleged crimes arising out of the gaming application process.[1] On

1. The Board has not sought to challenge the orders below and is not a party to this action.

October 2, 2007, this author, serving in his capacity as Emergency Duty Justice, temporarily stayed the September 20, 2007, September 21, 2007, and September 25, 2007 orders of the supervising judge pending further order of this Court in order to maintain the *status quo* and in order to allow the District Attorney to respond to petitioners' allegations.[2] On October 22, 2007, the Court as a whole extended the previously entered emergency stay and invited the Attorney General to file a brief as *amicus curiae* to address the question of the authority of county district attorneys to engage in grand jury investigations into matters arising out of the licensing procedure established by the Gaming Act. Mr. Justice Saylor concurred in the invitation to the Attorney General, but dissented to continuing the stay, as he would have vacated the stay. The Attorney General promptly complied, and we will now dispose of the matter in expedited fashion upon the present submissions.

Petitioners invoke two alternative provisions of the Judicial Code in support of their argument that this Court has direct appeal jurisdiction over the instant matter. First, petitioners rely upon Section 722(5) of the Judicial Code and Pa.R.A.P. 3331(a). Section 722(5) provides for review of final grand jury orders as follows:

### § 722. Direct appeals from courts of common pleas

The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:

\* \* \* \* \* \*

---

**2.** To summarize the orders at issue:

(1) the September 20th orders addressed petitioners' Motion to Quash Grand Jury Subpoenas, request for the original Notice of Submission, Petition to Intervene, and request for access to Notice of Submission;
(2) the September 21st orders concerned petitioners' Motion to Quash for Violations of the Grand Jury Act, their request to disqualify the Dauphin County District Attorney's Office, and Motion to Quash Subpoena directed to petitioner DeNaples;
(3) the September 25th order involved the three subpoenas issued to the Board the previous day.

(5) Supersession of a district attorney by an Attorney General or by a court or where the matter relates to the convening, supervision, administration, operation or discharge of an investigating grand jury or otherwise directly affects such a grand jury or any investigation conducted by it.

\* \* \* \* \* \*

42 Pa.C.S. § 722(5). Rule 3331(a) provides that the following final grand jury orders are subject to review by this Court:

(2) An order relating to the convening or discharge of an investigating grand jury or otherwise affecting its existence.

(3) An order entered in connection with the supervision, administration or operation of an investigating grand jury or otherwise directly affecting an investigating grand jury or any investigation conducted by it.

Pa.R.A.P. 3331(a)(2), (3); *see also* Pa.R.A.P. 702 (all petitions under Rule 3331 shall be filed in the Supreme Court). Rule 3331(d) addresses "interlocutory matters" and provides as follows:

**(d) Interlocutory matters.** The interlocutory or final nature of an order shall not be affected by this rule and, unless independent grounds appear for the review of an interlocutory order, the interlocutory nature of the order will be sufficient reason for denying the petition. The denial of the petition shall be deemed a disposition on the merits unless otherwise ordered or unless the petition expressly seeks permission to appeal from an interlocutory order and asserts no other basis of jurisdiction on appeal.

Pa.R.A.P. 3331(d). The Note to Rule 3331 states that it "is intended to provide a simple and expeditious method for Supreme Court supervision of special prosecutions and investigations, *e.g.,* orders of the supervising judge of an investigating grand jury." Pa.R.A.P. 3331, Note.

Petitioners argue in the alternative that this Court should exercise extraordinary jurisdiction pursuant to 42 Pa. C.S. § 726, which provides that:

[this Court] may, on its own motion or upon petition of any party, in any matter pending before any court or district justice ... involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any state thereof and enter a final order or otherwise cause right and justice to be done.

*Id.*[3]

In support of their various Applications, petitioners make a number of claims which can be summarized as follows: (1) the Application for Impanelment of the Grand Jury is invalid; (2) the District Attorney's Grand Jury investigation usurps the exclusive authority of the Attorney General; (3) the Grand Jury investigation usurps the Gaming Board's investigatory authority and discretion; (4) the confidentiality provisions of the Gaming Act have been violated; (5) the Notice of Submission is invalid; and (6) the subpoenas are legally flawed.

As we explain below, this Opinion will only address the authority/jurisdiction of the Dauphin County District Attorney to conduct this Grand Jury investigation.[4] We will not review petitioners' other claims on the merits because they do not arise from final orders, and thus they are not reviewable by this Court at this time.

## II. *Claims Other than the Authority of the District Attorney*

We will summarily deny petitioners' Application for Review with respect to all issues except that concerning the District

3. Although petitioners refer to King's Bench jurisdiction in the caption of their relevant Applications, they only address Section 726 extraordinary jurisdiction in the body of the Application. Petitioners thereby confuse this Court's King's Bench jurisdiction and extraordinary jurisdiction. While similar, the two are not the same. *See generally Pennsylvania Gaming Control Bd. v. City Council of Philadelphia,* 928 A.2d 1255, 1273–76 (Pa.2007) (Castille, J., dissenting) (discussing relevant precedent). Section 726 enables the Court to assume plenary jurisdiction over a matter pending before a court or district justice at any stage, while King's Bench jurisdiction allows the Court to exercise "power of general superintendency over inferior tribunals" even when no matter is pending before a lower court. *Id.* The present Application plainly implicates extraordinary jurisdiction under Section 726.

4. All questions addressed are purely legal, and thus, our review is plenary.

Attorney's authority. This is so because the specific orders at issue, involving subpoenas, are not final. Moreover, we do not believe that review by extraordinary jurisdiction pursuant to Section 726 is warranted with respect to these claims.

## A. Rule 3331 Jurisdiction

■■ In our discussion in *Twenty–Fourth Statewide Investigating Grand Jury*, 589 Pa. 89, 907 A.2d 505, 510 (2006) (hereinafter *"Twenty–Fourth Statewide II"*), this Court set forth the considerations at issue where a party seeks review of what appear to be interlocutory orders in grand jury matters. As a general rule, an order denying a motion to quash a subpoena is considered interlocutory and not subject to immediate appeal. *See Petition of Specter*, 455 Pa. 518, 519, 317 A.2d 286, 287 (1974) (citing *United States v. Ryan*, 402 U.S. 530, 532–33, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States*, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940)). One seeking to challenge the propriety of a grand jury subpoena must generally choose between complying with the subpoena and litigating the validity through contempt proceedings. *See In re Investigating Grand Jury of Philadelphia County (Appeal of Philadelphia Rust Proof Co.)*, 496 Pa. 452, 457 n. 3, 437 A.2d 1128, 1130 n. 3 (1981) (explaining that a[sic] order denying a motion to quash a grand jury subpoena is a "non-appealable, interlocutory order insofar as it affects ... petitioners, who have not had orders of civil contempt entered against them"); *In re Investigating Grand Jury of Philadelphia County*, 487 Pa. 68, 69, 408 A.2d 1099, 1099 (1979); *accord Ryan*, 402 U.S. at 532–33, 91 S.Ct. at 1582. Requiring the choice between compliance with the subpoena and the possibility of contempt preserves the interest in expeditious grand jury proceedings. *See Petition of Specter*, 455 Pa. at 519–20, 317 A.2d at 286 (citing *Ryan*, 402 U.S. at 533, 91 S.Ct. at 1582 (explaining that "we have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to

produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal")). Further, the approach facilitates development of an adequate factual record in support of the reasons supporting resistance to the subpoena.

*Id.* at 509–10. In the *Twenty–Fourth Statewide Investigating Grand Jury litigation,* a prior appeal and petition concerning the same Grand Jury were, respectively, quashed and dismissed by *per curiam* order. *See id.* (discussing *Twenty–Fourth Statewide Investigating Grand Jury,* 586 Pa. 465, 895 A.2d 518 (2006) (*per curiam*) (hereinafter *"Twenty–Fourth Statewide I "*)). The appeal was quashed and the petition was dismissed in *Twenty–Fourth Statewide I* because the petitioners, at the time of those filings, had not yet failed to comply with the grand jury subpoenas nor had a contempt ruling been issued. *See Twenty–Fourth Statewide II,* 907 A.2d at 507–09. In contrast, the appeal in *Twenty–Fourth Statewide II* was ripe because the petitioners followed "the traditional route for challenging a grand jury subpoena, namely, non-compliance at the risk of contempt sanctions." *Id.* at 509.

 Given the posture of the present challenges, the orders at issue clearly are interlocutory. The three orders do not meet the definition of a final order pursuant to Pa.R.A.P. 341(b), which defines final orders as "any order that: (1) disposes of all claims and of all parties; or (2) is expressly defined as a final order by statute; or (3) is entered as a final order pursuant to subdivision (c) of this rule." Pa.R.A.P. 341(b). An order in connection with a Grand Jury is reviewable under Pa.R.A.P. 3331(a), *supra,* but under subsection (d) of that rule, which we have quoted above, review is limited to final orders. Because the orders in the present case are not final, they are not immediately reviewable by this Court under Rule 3331. While the orders under review embrace a variety of issues brought by petitioners, all of those issues arose directly in response to the issuance of subpoenas, and unlike in *Twenty–Fourth Statewide II,* petitioners here have yet to expose themselves to contempt.

██ An otherwise interlocutory order may, of course, be reviewable if it satisfies the requirements of the collateral order doctrine. The collateral order doctrine authorizes an interlocutory appeal only from "an order separable and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). *See also Twenty–Fourth Statewide II,* 907 A.2d at 511. The collateral order doctrine is stringently applied. It is not sufficient that the claims are important to the parties; only claims that "involve rights deeply rooted in public policy going beyond the particular litigation at hand" warrant review. *Geniviva v. Frisk,* 555 Pa. 589, 725 A.2d 1209, 1214 (1999). Additionally, courts have declined to apply the collateral order doctrine and circumvent the typical path of challenging a subpoena. *See Twenty–Fourth Statewide II,* 907 A.2d at 511. Petitioners do not argue that the orders at issue meet the requirements of the collateral order doctrine, and it is clear that the doctrine does not apply. Because the orders giving rise to petitioners' claims are not final and do not satisfy the collateral order doctrine, petitioners are not entitled to review of these claims as of right.

## B. Extraordinary Jurisdiction

██ We also decline to exercise extraordinary jurisdiction over the orders under Section 726, to the extent petitioners seek to pursue these claims. First, petitioners failed to adequately invoke this Court's extraordinary jurisdiction. The Application does little more than reference alleged breaches of Grand Jury secrecy, citing newspaper articles that discuss information relating to the on-going investigation which is in the public realm (*e.g.,* judicial orders, subpoenas, etc.). Petitioners identify nothing that threatens to expose the "sanctity" of the Grand Jury's inner-workings. Furthermore, with the exception of the prosecutorial authority claim discussed below, petitioners' claims do not implicate "an issue of immediate public importance" that would require this Court to

take extraordinary steps to "enter a final order or otherwise cause right and justice be done." *See* 42 Pa.C.S. § 726. This Court will not exercise extraordinary jurisdiction to consider any and every challenge to the Grand Jury process, challenges that are properly reviewable in the ordinary course, only once a final order issues.

### III. *Prosecutorial Authority Under the Gaming Act*

██ Petitioners' challenge to the authority of the prosecutor, like the claims above, arises in the context of an Application of Review of interlocutory orders. Moreover, as noted, petitioners have not invoked the collateral order doctrine. However, we will review the fundamental, but narrow challenge to the authority of the District Attorney to convene the Grand Jury under the Gaming Act, as an exercise of this Court's plenary powers under 42 Pa.C.S. § 726. We exercise jurisdiction over this single foundational claim because this is an area of great public importance, involving an issue of first impression under the recently-enacted Gaming Act that is capable of repetition.

Petitioners claim that the local prosecutor's investigation in this matter usurps the exclusive authority of the Attorney General to investigate certain crimes arising in relation to the Gaming Act. Petitioners concede, as they must, that Section 1517(d) explicitly provides local district attorneys with the authority to investigate violations under the Gaming Act. Section 1517 states in relevant part:

§ **1517. Investigations and enforcement**

* * * * * *

**(d) Criminal action.—**

(1) The district attorneys of the several counties shall have authority to investigate and to institute criminal proceedings for a violation of [the Gaming Act].

(2) In addition to the authority conferred upon the Attorney General under ... the Commonwealth Attorneys Act, the Attorney General shall have the authority to investigate and, following consultation with the appropriate district

attorney, to institute criminal proceedings for a violation of [the Gaming Act]. . . .

4 Pa.C.S. § 1517(d). Petitioners argue, however, that in light of other provisions in the Gaming Act, the authority of a county district attorney to investigate violations under the Act should be deemed to be subordinate to that of the Attorney General. Specifically, petitioners note that Section 1402(a)(4), which addresses costs reimbursement incurred by the State Police and Attorney General while carrying out their responsibilities under the Act, fails to mention district attorneys. Petitioners extrapolate from this funding gap that the General Assembly must have intended to subordinate the authority of county district attorneys to that of the Attorney General. Along similar lines, petitioners note the absence of any mention of county district attorneys in Section 1207(14), which describes the Gaming Board's power to consult with the State Police and the Attorney General, and Section 1408(c), which provides for local law enforcement grants. In petitioners' view, this silence should be interpreted as *sub silentio* indication of a fixed legislative intent to subordinate local district attorneys' prosecutorial authority under the Act. *See* 4 Pa.C.S. §§ 1207(14), 1408(c).

The District Attorney of Dauphin County responds that the Gaming Act does not place any limitation on the powers and duties of local district attorneys, and does not purport to vest exclusive jurisdiction over criminal violations of the Act in the Attorney General. Citing Section 1517(d)(1), the District Attorney argues that the plain language of the Act clearly vests district attorneys with the power to investigate crimes such as perjury, false swearing, and unsworn falsification to authorities when committed in proceedings under the Gaming Act, if those alleged crimes occur within their territorial jurisdiction.

In its *amicus curiae* brief, the Attorney General makes a more thorough and compelling argument for concurrent jurisdiction under the Act, as well as an argument in support of a local district attorney's use of the Grand Jury process to investigate Gaming Act violations. The Attorney General first cites the plain language of Section 1517. The Attorney Gener-

al also notes that Section 1517 creates two "in-house" investigative and enforcement entities—the Bureau of Investigation and Enforcement, and the Office of Enforcement Counsel—but expressly limits these entities to noncriminal matters. The Attorney General then cites Section 1517(d), which speaks directly to the investigative authority of both the Attorney General and local district attorneys. Based on this plain language, the Attorney General echoes the view of the District Attorney, that Section 1517(d) controls. Furthermore, in the view of the Attorney General, the Sections of the Gaming Act that petitioners cite as indicative of a different legislative intent are unrelated to the question of prosecutorial authority.

The Attorney General further notes that nothing in the Act renders the authority of district attorneys subordinate to that of the Attorney General, and therefore, prosecutorial authority under the Act is patently concurrent. The Attorney General notes that if the General Assembly wanted the Attorney General to have exclusive or primary authority over criminal violations of the Gaming Act, it easily could have done so explicitly. Thus, for example, the Attorney General notes that the General Assembly could have acted as it did when drafting the Lobbying Disclosure Act, which has a provision specifically granting the Attorney General exclusive jurisdiction to prosecute criminal violations of that Act. See 65 Pa.C.S. § 13A09(h).

The Attorney General concludes by rebutting petitioners' assertions that the failure of Sections 1207(14), 1402(a)(4), and 1408(c) to mention district attorneys should be read as implicitly subordinating the authority of local prosecutors. The Attorney General notes that this attenuated statutory construction argument cannot overcome the plain language of Section 1517(d)(1). In the Attorney General's view, the financial provisions address the practical realities of administering the Office of Attorney General as an agency with statewide jurisdiction. In contrast, the jurisdiction of a county district attorney is limited to a single county, and the resources for conducting such localized investigations typically exist in place. Furthermore, the Attorney General highlights the necessity of additional dedicated funding for his office because Section

1517(c.1) of the Gaming Act mandates the creation of a gaming unit within the Office of Attorney General. Additionally, the Attorney General notes that the language of Section 1207(14) permitting the Board to seek necessary advice does not speak exclusively to the Attorney General; county district attorneys could certainly constitute the "other persons" the Board deems necessary to consult for advice.

We agree with the Attorney General's straightforward and comprehensive analysis. Section 1517 of the Act plainly confers authority upon county district attorneys to prosecute violations of the Act and does not subordinate that authority to that of the Attorney General. Nor does Section 1517 purport to limit that authority to post-licensing crimes. Just as importantly, nothing in the Act purports to remove or limit the existing general authority of county district attorneys to investigate crimes occurring in their jurisdiction. The unrelated Sections of the Act relied upon by petitioners, which speak to issues other than prosecutorial authority, simply cannot negate by inference the plain and unambiguous language of the Act. It is also notable that the Office of Attorney General, the very Commonwealth Officer whose authority petitioners claim the District Attorney is usurping, argues in favor of concurrent jurisdiction under the Act.

A district attorney acts within the bounds of his authority when he employs an investigating grand jury to investigate possible crimes that have occurred within its jurisdiction. A district attorney is the chief law enforcement officer in the county in which he or she is elected. 71 P.S. § 732–206(a). A district attorney is charged with prosecuting all criminal and other prosecutions occurring in his or her county, in addition to all other duties prescribed by other statutes. See 19 P.S. § 1402(a); 16 P.S. § 9952. The types of possible criminal violations being investigated by the District Attorney in this case—false statements/perjury related to the licensing process, which occurred within his territorial jurisdiction—are clearly within the scope of veracity-based crimes recognized by the Gaming Act. See 4 Pa.C.S. § 1518(a)(1) (veracity-based crimes defined in Chapter 49 of Title 18 of the

Pennsylvania Consolidated Statutes (the Crimes Code) have been made applicable to "any person providing information or making any statement ... to the board, the bureau, the department, the Pennsylvania State Police or the Office of Attorney General, as required by [the Act]"). As governed by the Pennsylvania Investigating Grand Jury Act, an investigating Grand Jury is one of the tools Pennsylvania law provides to prosecutors. *See* 42 Pa.C.S. § 4541 *et seq.* Nothing in the Gaming Act or the Grand Jury Act appears to limit a county district attorney's use of an investigating Grand Jury in the present circumstances.

The question before this Court is not whether it was wise for the General Assembly to draft the Gaming Act in a way which allows county district attorneys to undertake criminal investigations based upon the licensing process and proceedings before the Gaming Board. Our task is solely interpretive, and the language of the Act is clear. The essentially political points that petitioners allege—a runaway district attorney unhappy with the Board's licensing decision, pursuing an agenda—are not relevant to the task of interpretation. The Gaming Act, as written, authorizes the investigation here. Accordingly, we hold that county district attorneys share concurrent jurisdiction with the Attorney General to investigate criminal violations of the Gaming Act, and that the Gaming Act does not limit the existing authority of local prosecutors. Because the Grand Jury investigation in this case falls within the District Attorney's powers, this Court, exercising plenary review, rejects petitioners' challenge to the authority of the Dauphin County District Attorney.

## IV. *Conclusion*

It remains to dispose of the numerous pleadings the parties have filed. For the reasons set forth above, we dismiss petitioners' Application for Review, as well as their Application for a Stay of Proceedings Pending Review, and Emergency Application for Appointment of Master to Investigate Violations. The Application for Exercise of King's Bench Jurisdiction is denied as stated; nevertheless, we have examined

one issue under our related plenary powers pursuant to 42 Pa.C.S. § 726, and we have determined that petitioners are not entitled to relief on their claim that the District Attorney of Dauphin County lacks authority to conduct the instant Grand Jury investigation.

Petitioners have also filed an Application to File under Seal and a Motion to Seal Brief of *Amicus Curiae.* There is little argument forwarded in support of this claim. It appears that the information contained in the filings of all parties is limited to that which is within the public realm. Because petitioners have failed to demonstrate how the pleadings implicate the secrecy of the Grand Jury, the Application and Motion are hereby denied.

Additionally, the Commonwealth has filed a Motion for Expedited Review, to which petitioners have responded with a new matter. The Commonwealth's Motion for Expedited Review is denied as moot and petitioners' new matter is concomitantly dismissed.

Finally, the existing stay is hereby dissolved.

Jurisdiction is relinquished.

Justice SAYLOR, EAKIN, BAER and FITZGERALD join this opinion.

Chief Justice CAPPY files a concurring opinion which is joined by Justice BALDWIN.

Chief Justice CAPPY, concurring.

I reluctantly join in the result reached by the Majority, which concludes that the explicit language of Section 1517(d) of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. § 1101 *et seq.*("the Act"), provides for county district attorneys to share concurrent authority with the Attorney General in investigating and prosecuting criminal violations of the Act. I write separately, however, to point out the perils that arise from such statutory edict, particularly the carte blanche self-elevation of the Dauphin County District Attorney as a super-prosecutor of purported gaming violations

merely due to the geographical circumstance that he presides in the county in which the politically-charged gaming legislation was enacted. By subpoenaing documents relating to Petitioners' gaming application and license, the District Attorney is attempting to unravel the extensive proceedings that have been conducted by the Pennsylvania Gaming Control Board after an exhaustive investigative and adjudicatory process and which were affirmed by this Court in *Pocono Manor Investors, L.P. v. Gaming Control Board*, 592 Pa. 625, 927 A.2d 209 (2007). The Legislature surely could not have contemplated such a distorted application of Section 1517 of the Act.

A more prudent scheme would designate the Office of Attorney General as the sole prosecutorial body to *uniformly* enforce the comprehensive statutory scheme for gaming license approval. In my view, the General Assembly envisioned such an approach and merely intended for Section 1517 to afford local district attorneys the authority to carry out their traditional role of investigating and prosecuting crimes that may occur on the premises of a gaming facility. However, because my view is not supported by the Legislature's use of broad statutory language in Section 1517, I am constrained to join in the Majority's result.[1]

Justice BALDWIN joins this concurring opinion.

---

1. I am also deeply concerned by the Grand Jury leaks in this matter, which are obvious by simply reading the newspaper. This smacks of a personal quest of someone either seeking personal aggrandizement or a vendetta against a family or an ethnic group. Whatever the motive, it is intolerable that what goes on in a confidential grand jury is published the next day by the media.